**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Antonio Joseph OCEGUEDA,
Defendant-Appellant.**

**No. 76–3586.**

United States Court of Appeals,
Ninth Circuit.

Nov. 28, 1977.

E. Richard Walker, Sacramento, Cal., for defendant-appellant.

Thomas T. Couris, Asst. U. S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before DUNIWAY and KILKENNY, Circuit Judges, and LUCAS,[*] District Judge.

LUCAS, District Judge:

Antonio Joseph Ocegueda appeals from his conviction on two counts of violating 18 U.S.C. § 922(a)(6),[1] for falsely stating that he was not an unlawful user of narcotic drugs, and on two counts of violating 18 U.S.C. § 922(h)(3),[2] for knowingly receiving firearms although he was an unlawful user of narcotic drugs.[3]

On June 24 and July 5, 1976, appellant purchased firearms from licensed gun dealers in Sacramento, California. One gun was purchased on each occasion. In connection with each purchase, appellant was required to complete and sign standard A.T.F. form number 4473 presented to all firearms purchasers. Question 8(d) on the form asks whether the purchaser is "an unlawful user of, or addicted to, marihuana, or a depressant, stimulant, or narcotic drug." On each occasion, appellant answered in the negative.

Appellant's heroin use, by injection or inhalation of the substance, dates from 1970. At one time he had a $100 a day habit. Ocegueda pleaded guilty to a California misdemeanor charge for possession of narcotics paraphernalia in 1973, and was committed for heroin addiction to the California Rehabilitation Center. After being paroled, Ocegueda continued to use heroin, and admitted the same to his parole officer. In September, 1974, he was enrolled in a methadone program, which he left in 1975. Ocegueda used heroin toward the end of the methadone program, as well as after its termination. As a result of his continued heroin use and failure to cooperate with parole officers, appellant was recommitted to the California Rehabilitation Center in 1975. He was released in March, 1976, and was arrested for the gun purchases on August 12, 1976.

Circumstantial evidence and the admissions of appellant clearly show the continued use of heroin during the period of the gun purchases. Ocegueda admitted in court that he had used heroin at least ten times from March to August, 1976. He told his arresting officer that he had used $25 worth of heroin on the day of his arrest. Photographs taken of appellant on the date of his arrest showed extensive "track" marks on his arms, indicating several instances of recent heroin use by injection.

---

[*] Honorable Malcolm M. Lucas, United States District Judge for the Central District of California, sitting by designation.

1. 18 U.S.C. § 922(a)(6) provides:
   It shall be unlawful—
   (6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement . . . with respect to any fact material to the lawfulness of the sale . . . .

2. 18 U.S.C. § 922(h)(3) provides:
   It shall be unlawful for any person—
   (3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954); . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

3. Section 922(h)(3) refers to 26 U.S.C. § 4731(a) for a definition of "narcotic drug." The latter section, however, was repealed by Public Law 91–513, Title III, § 1101(b)(3)(A), October 27, 1970, 84 Stat. 1292. Public Law 91–153 enacted 21 U.S.C. § 802(16), which defines heroin as a narcotic drug, just as it was defined in 26 U.S.C. § 4731(a). Section 922(h)(3) therefore should be read to refer to 21 U.S.C. § 802(16).

The term "unlawful user" of narcotics is fundamental to Ocegueda's conviction under both § 922(a)(6) and § 922(h)(3). On appeal, he contends that the term is unconstitutionally vague under the due process clause of the Fifth Amendment, and that the status of "unlawful user" of narcotics may not be subject to punishment under the Eighth Amendment. Because neither contention is meritorious, we affirm the conviction.

## I. Vagueness Challenge

■ A criminal statute may not be so vague that men of ordinary intelligence must necessarily guess as to its meaning. *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Colten v. Kentucky,* 407 U.S. 104, 110–11, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); *Cameron v. Johnson,* 390 U.S. 611, 616, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954); *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). The Constitution does not require exact specificity, but it does require that a law give reasonable notice so that citizens subject to it may conduct themselves accordingly. Whether a statute is unconstitutionally vague depends upon the common understanding of its terms. *Broadrick v. Oklahoma, supra* 413 U.S. at 608, 93 S.Ct. 2908; *United States Civil Service Commission v. National Association of Letter Carriers, AFL–CIO,* 413 U.S. 548, 578–79, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *United States v. Petrillo,* 332 U.S. 1, 8, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947); *United States v. Crosson,* 462 F.2d 96, 100 (9th Cir.), *cert. denied,* 409 U.S. 1064, 93 S.Ct. 569, 34 L.Ed.2d 517 (1972).

■ In this case, appellant contends that the relevant statutes are vague both in the abstract, and as applied to him. It is now established, however, that in cases not involving First Amendment claims a court may only consider a vagueness challenge on the facts of the case before it. *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); *United States v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975); *United States v.*

*National Dairy Products Corp.,* 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). We therefore are not concerned with hypothetical situations where the term "unlawful user" does not give an ordinary person reasonable notice; rather, our concern is whether the term is impermissibly vague in the circumstances of this case.

Neither § 922(h)(3) nor its legislative history provides a definition of "unlawful user." However, a common sense meaning of the phrase clearly includes the conduct of appellant. Ocegueda injected himself with heroin, a substance that has no legal use by laymen. Indeed, federal law classifies heroin as lacking any accepted medical use. 21 U.S.C. § 812(b)(1)(B). It is not the type of drug that may be used legally by laymen in some circumstances, but not in others. The use of heroin by laymen is not permissible in any circumstance. Thus, we hold that the term "unlawful user" is not vague in the circumstances of this case.

Reference to the statutory history of § 922 provides additional support for denying appellant's vagueness challenge. The present § 922(h)(3) was enacted by the Gun Control Act of 1968, Publ.L.No. 90–618, Tit. I, § 102, 82 Stat. 1214. The Act was a comprehensive gun control legislation intended to keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency. S.Rep.No.1501, 90th Cong., 2d Sess. 22 (1968); *Barrett v. United States,* 423 U.S. 212, 218, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976); *Huddleston v. United States,* 415 U.S. 814, 824, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974). In creating the classification "unlawful user" as one category of persons not entitled to possess firearms, Congress intended to refer to any law—federal, state, or municipal—making the use of narcotics unlawful. *See, e. g., United States v. Garcia,* 555 F.2d 708, 711 (9th Cir. 1977); *United States v. Akers,* 542 F.2d 770, 772 (9th Cir. 1976) *cert. denied,* 430 U.S. 908, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977); *United States v. Howard,* 504 F.2d 1281, 1286–87 (8th Cir. 1974); *United States v. Ramirez,* 482 F.2d 807, 813–14 (2d Cir.) *cert. denied,* 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973).

As the court below determined, and so instructed the jury, California Health & Safety Code § 11550 proscribes the use of heroin without a doctor's prescription.[4] On the facts of this case, it appears that Ocegueda's use of heroin was unlawful within the meaning of the California statute. Consideration of a specific law making heroin use unlawful therefore further bolsters the conclusion that the term "unlawful user" is not vague in the circumstances of this case.

Appellant relies on *Weissman v. United States*, 373 F.2d 799 (9th Cir. 1967) to support his vagueness challenge to the term "unlawful user." In *Weissman*, this Court held that the terms "uses narcotic drugs" and "user of narcotic drugs" were unconstitutionally vague as they were used in a federal statute[5] requiring the registration of drug users at international borders. The Court was of the opinion that an ordinary person could not know what a use was, or whether one or several uses, or past or present use sufficed under the statute. 373 F.2d at 802–03.

However, *Weissman* was decided prior to the Supreme Court decisions limiting the scope of vagueness doctrine in non-First Amendment cases. *United States v. Powell, supra; United States v. Mazurie, supra.* Under the current law, this Court will only consider a vagueness challenge on the facts of the instant case. *Weissman* is not controlling as to the language of § 922(h)(3) on these facts.

Had Ocegueda used a drug that may be used legally by laymen in some circumstances, or had his use of heroin been infrequent and in the distant past, we would be faced with an entirely different vagueness challenge to the term "unlawful user" in

§ 922(h)(3). However, Ocegueda's prolonged use of heroin, occurring before, during and after the period of the gun purchases, presents a situation where the term cannot be considered vague under the due process clause of the Fifth Amendment.

## II. Punishment of "Unlawful Users" Under the Eighth Amendment

Appellant also argues that "unlawful user" describes a person "who cannot under the law exist." Since the trial court defined "unlawful user" as an "unlawful *habitual* user" in its instructions to the jury, Ocegueda asserts that the court was defining a status that may not be subject to punishment under the Eighth Amendment, as interpreted by *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). *Robinson* held that California Health & Safety Code § 11721, predecessor to § 11550, was unconstitutional to the extent that it punished the status of narcotic addiction, in addition to punishing the act of using narcotics. 370 U.S. at 667–68, 82 S.Ct. 1417. A subsequent California case interpreted the word "use" in § 11550 to mean "current use, not a use in the past." *People v. Velasquez*, 54 Cal.App.3d 695, 700, 126 Cal.Rptr. 656, 658 (1976). Appellant therefore contends that to satisfy both the California law and § 922(h)(3), appellant had to use heroin and purchase guns on the same day.

The argument is without merit. The federal statute prohibits unlawful users from acquiring firearms, and prohibits their telling lies under oath in order to get firearms. Such punishment does not violate the *Robinson* ban on status crimes. *Robin-*

---

4. California Health & Safety Code Section 11550 provides, in pertinent part:

    No person shall use, or be under the influence of any controlled substance [heroin is so defined in § 11054] . . . ., excepting when administered by or under the direction of a person licensed by the state to dispense, prescribe, or administer controlled substances. . . .

5. 18 U.S.C. § 1407, which provides, in pertinent part:

    . . . [N]o citizen of the United States who is addicted to or uses narcotic drugs

    . . . (except a person using such narcotic drugs as a result of sickness or accident or injury and to whom such narcotic drug is being furnished, prescribed, or administered in good faith by a duly licensed physician . . .) . . . . shall depart from or enter into . . . the United States, unless such person registers . . . with a customs official, agent, or employee at a point of entry or a border customs station.

    Section 1407 was later repealed by Public Law 91–153, Title III, § 1101(b)(1)(A), October 27, 1970, 84 Stat. 1292.

son v. *California, supra,* 370 U.S. at 667–68, 82 S.Ct. 1417. As the Supreme Court explained in *Powell v. Texas,* 392 U.S. 514, 533, 88 S.Ct. 2145, 2154, 20 L.Ed.2d 1254 (1968):

> "The entire thrust of Robinson's interpretation of the Cruel and Unusual Punishment Clause is that criminal penalties may be inflicted only if the accused has committed some act, has engaged in some behavior, which society has an interest in preventing, or perhaps in historical common law terms, has committed some *actus reus.*"

Since punishment in this case is for acts, appellant's argument on the basis of *Robinson* must fail.

WE AFFIRM.